at all or arguments not to exceed 15 minutes per side. Elijah Noelle Jr. for the appellant. Good morning, your honors. Good morning. My name is Elijah Noelle Jr. and I am counsel for the appellant, Memphis Police Director Tony Armstrong in his individual capacity. Your honors, this is, as the court is aware, an interlocutory appeal from a denial by the lower court of Director Armstrong in his individual capacity, a request by motion that this lawsuit be dismissed as to him on the grounds of qualified immunity. Your honor, I would suggest that, certainly at least for me to focus my remarks, I would like to read to the court from the Essex v. County of Livingston case, just one or two sentences, and this case was cited at pages 1 and 7 of our reply brief. This case involved a situation in which a deputy sheriff was charged with sexual assault, and the issue was whether or not the sheriff could be found to be personally liable, and the Sixth Circuit says as follows in the Essex case, Whereas the county's liability may be premised on the policymaker's deliberate indifference, the individual defendant, that is the sheriff or in this case Director Armstrong, may be liable only on a showing of personal involvement. The question of deliberate indifference for establishing liability against the county for bizarre, that's the deputy sheriff, actions, I'm sorry, that is the sheriff, actions in his official capacity as policymaker is a separate inquiry. And I say that, I refer to that because in paragraph 84 of the complaint, the plaintiff alleges as follows, By failing to recognize or correct these deficiencies with the policies, practices, and customs of the MPD, Director Armstrong personally showed deliberate indifference to the rights of people with whom the MPD regularly came in contact, including Mr. Vanderpool, and the lower court referred to deliberate indifference as being a basis for finding that Director Armstrong was personally involved in the alleged unconstitutional conduct by the officers. And it is for that reason that we are, we certainly disagree with that conclusion by the court, and I realize that this is a De Novo review, and so the question before the court then is, are there allegations in the complaint, well-plead allegations, that are sufficient to show that Director Armstrong was personally involved, and clearly there is no contention that he was personally involved. This was an encounter that occurred on the streets in a matter of minutes where officers approached Mr. Vanderpool and it's alleged that various things happened, Director Armstrong had no knowledge of that, did nothing to set any of that into motion. So in the absence of personal involvement, the question then becomes, what did Director Armstrong do, if anything, that's alleged in the complaint, that encouraged, authorized, or condoned the alleged misconduct? And we would submit that there is nothing alleged in the complaint that meets that standard. The complaint alleges that Director Armstrong made a comment, or the complaint says, in late 2012, that the police department was in need of further inquiry, and there's a reference to a need to adopt or explore best practices. If anything, that might relate to training, or a need for additional training, but it does not show personal involvement, and certainly that is not enough to show personal involvement or encouragement of an event that does not occur until April of 2013. Well, I know, it's a difficult case, I think it's clear that the law requires something extra for this type of individual liability, but I also think there are some cases that seem to allow it if it's, you know, some affirmative act of condoning, or setting a policy that permits it or encourages it. It seems to me that the allegations here are that, as the chief of police, he was well aware that there were all these shootings, and kind of deliberately and affirmatively took no action. To basically discipline the officers or create a situation where they knew that they weren't supposed to be doing this. The only way I can respond is, unfortunately, to repeat what I've already said. It seems to me that that is a deliberate indifference argument, which according to the case law, while it may be sufficient to find that inappropriate decisions were made by Director Armstrong in his official capacity, such that the governmental entity can be held liable. At least as I read the case law, and I made a reference to this in a footnote of my initial brief, footnote two, but it seems clear that the law is that a deliberate indifference analysis does not apply when the issue is whether or not the supervisor can be held individually liable. Is there any practical reason why it matters whether Armstrong is in the case as an individual? I'm sorry, Judge, why would you repeat the question? I didn't hear the first part. Is there any practical reason why it matters whether Armstrong is in the case in both his individual and official capacities? Yes, Your Honor, and to the extent Director Armstrong is found to be liable in his individual capacity, then his personal funds, if you will, would be at stake for any issue of damages. The other issue is that certainly one of the reasons for raising the defense of qualified immunity is it would excuse the director or governmental official from having to spend time to defend this case, to expand his personal funds in defending the case. Whereas if he is only in the case in his official capacity, that is tantamount to the city of Memphis being in the case, and there is no issue raised that the city of Memphis is not seeking dismissal. And the only issue before the court is whether or not Director Armstrong should remain in the case in his individual capacity, or more specifically, whether the allegations in the complaint are sufficient to show that he condoned or encouraged the activity. The District Court denied your motion, finding that it has fled. The facts allege that Vanderpool's Fourth Amendment rights against excessive force had been violated by Officer Dunaway and McMillanton, and that excessive force was the result of custom and policy put in place and implicitly embraced by Armstrong. Accordingly, the District Court held that Armstrong was not entitled to qualified immunity and that he was liable in his personal capacity as the officer's supervisor. Now, was the District Court in error there? With all due respect to the District Court, we believe that yes, Your Honor, that there was error in that analysis, because while that conclusion is reached, the issue still remains whether the allegations of the complaint are sufficient to show that he personally condoned or encouraged this specific incident of misconduct. And there is no, again, there simply are no allegations to show that Director Armstrong was in any way aware of this incident as it was taking place. But I don't, I mean, I don't think the cases say that he has to condone this particular incident. I think what we're dealing with is that thin line between condoning and being indifferent. I mean, when you condone, you sort of encourage, you anticipate, you're aware, and when you're deliberately indifferent, you just, you know, you don't care. You don't take the active measures that maybe you should take. But, I mean, the cases kind of permit some sort of liability without being part of the incident, right? Yes, Your Honor, and to the extent either the Director is personally involved or has, I can only, I apologize for just parroting the language, but it seems fairly consistent that the supervising official, particularly when the claim is based on one of a failure to train or supervise, there must be a showing that the supervising official did something to encourage or condone. Another way of stating it is that the complaint can be construed to state that there's a policy or practice of inadequate supervision and training for which the Director of Police is responsible that resulted in this incident. Now, whether the facts bear out or the allegations bear out that your client had adequate responsibility or involvement in these policies or practices may be another thing, but there is the allegation of policies and practices of the department based upon deficient supervision and training, and the complaint attempts to attribute that to your client. What would you say to that? Well, first of all, the allegation of inadequate supervision and training we would submit, Your Honor, is a conclusory allegation. If you look at the specific facts of the complaint, in terms of the well-plaid facts as to Director Armstrong beyond those conclusory allegations, as I have said, there are three specific allegations regarding Director Armstrong. One is that he made a comment, I believe it's in paragraph 37. He is alleged to have made a comment in as late as 2012 that there was a need to improve disciplinary processes and that police and procedures, policies and procedures to conform to best practices. There is an allegation in paragraph 49 that in December of 2012 he made the comment or remark that police officers were on heightened alert after another police officer had been shot and killed while serving a search warrant. And then paragraph 82 of the complaint alleges that Director Armstrong concurred in the results of the investigation. I've tried to examine the case law and I thought I could find something that more specifically addresses the extent to which an after-the-fact action, in this case the alleged concurrence of this particular investigation into this incident of misconduct, somehow can be considered the same as a before-the-fact encouragement or condoning. I could not find any case law on that issue one way or the other, but in terms of how would I respond to that, I would respond, Your Honor, that those three allegations of actual actions or in one case the implied omissions by Director Armstrong or failures to act are not enough to establish or to hold him personally liable, no matter how favorably the allegations in the complaint are construed in favor of the plaintiff. And if I could just make, I realize my, but as a continued response to your question, the case law as I read it, Your Honors, says that... What's your best case for that? For the point I just made? Yes. At this point, Your Honor, I would suggest that the Essex v. County of Livingston case is the best case, or is close, Your Honor, as a best case. And the reason I say that, if I can read from the opinion... Oh, you don't have to read it as long as we have the case. But I'm not satisfied with that as being my best case because there are distinctions. In that case, they refer to the fact that the sheriff was aware of sexual assaults in other jurisdictions, whereas... I'm afraid you're out of time unless you want to take some of your rebuttal time. I'm not sure how much I have left, but thank you very much, Your Honor. Thank you. May it please the Court, I am Andy Clark from the Memphis-Shelby County Bar. I represent the plaintiff, Scott Petros, in this matter. Why is it important to have Armstrong in as an individual? Yes. Armstrong, and I think what the Court, Judge White, what you asked him about whether or not he's required to be in from Mr. Knoll, what are the practical consequences? Is there indemnity? I think that might have been what the Court was getting to. In this case, in this particular case, I've been doing civil rights cases for a long time. It's very rarely that I sue a chief of police. And I think it's based on a lot of concerns that the Court has expressed is what is the difference between municipal liability and supervisory liability. In this particular case, though, what we have is a situation where a police chief came in who did a review of the department, who found out we had deficiencies with the department with respect to discipline, with respect to training, and with respect to ethics. He did nothing, and these are all pled in the complaint. He did nothing about it. The mayor came out and called the director of police unacceptable that they needed outside investigations of events. And then there was a rash of 54 shootings over five years while he was there. Let me get the date straight. When did Armstrong come in? I don't know that we allege that in the complaint. From the record... What was the date of the shooting? The date of the shooting in this case was April 23, 2013. The complaint alleges that he was in there for some period of time. We went back to 2009 in my complaint, and I looked through the complaint for that specific thing. When did these shootings start, or were they constant? In 2009. We attached as an exhibit to our complaint a list of the shootings. Right, but then, so, from 2009 to, there were 54, did you say? Right. But there were 18 from when to when? From 2013 to the filing of the complaint. I mean, I'm sorry, from 2012, from the Lange incident. Okay, are you alleging that his failure to adequately investigate the shootings and to simply, you know, rubber stamp whitewashed reports contributed to this shooting? What I'm saying is if we look at, the answer is yes. We have alleged there's policy, practice, and customs that were maintained by the city in deliberate indifference with respect to training, with respect to... Okay, I don't think you can maintain Armstrong in this lawsuit on deliberate indifference. Right. I don't think the law lets you do that. I think you have to find an affirmative connection between his conduct and this shooting. I would respectfully disagree, Your Honor. I think the case law, if you look at, for example, in the case that just came out from the Sixth Circuit, Coley v. Lucas County. It's published, but it doesn't have a Westlaw site yet. It came out August 21st. You know, the court said a claim for personal liability for failure to train and supervise differs from a claim against... Let me take that. A claim of personal responsibility liability for failure to train and supervise differs from a 1983 claim against the municipality for failure to train. In order to establish failure to train in a personal liability situation, there must be a showing that the supervisor encouraged the specific incident of misconduct or in some way directly participated. We admit we don't have that. The second part is, at a minimum, a 1983 plaintiff must show that the supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the subordinates. In this case, they basically, the allegations were that the sheriff failed to train and supervise the staff regarding proper use of force and failed to investigate allegations of excessive force. This involved an extraction case. Since these allegations are sufficient, they also said that there were attempts to cover up the actual events in that case. The plaintiff alleged that the sheriff never intentionally and deliberately made false statements to federal officials. You're wondering, the plaintiff alleged the sheriff what? The plaintiff alleged that the sheriff in this case had full knowledge of the assault but intentionally and deliberately made false statements to federal officials about his knowledge. These allegations are sufficient to show the plaintiffs have established a valid claim in it so far as they have shown that TELB at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. So what do you have here? We have in this case, we have, we look at it two different ways. In our case, it's much stronger than the allegations in that case. In our case, we have a sheriff, I mean a chief of police,  an increased awareness of these things that were going on, and we also have him in here actually signing the report ratifying the conduct. We have alleged throughout the complaint that these investigations are a farce, that they're a rubber stamp. Another case I'd point out, this is not... Do you mean in this case or a pattern of investigations that just don't find fault with anyone? We are saying both. I mean, there is a municipal liability claim, there's a supervisory liability claim. The supervisor is part of making the policies, he can also be personally liable. Just to understand your position, does this mean that if Mr. Armstrong does not change or improve the training and supervision of the police department, that every time there's a bad shooting by the police or police misconduct, that he will be potentially personally liable for each and every one of those? Not if he disciplines somebody, not if he actually investigates. Well, if he continues, if the status quo continues as you have alleged it to be, and you've alleged all kinds of bad consequences from the way things currently exist, if the director of the police department doesn't change any of that, does that mean he can be sued for each and every bad police shooting going forward? I mean, I guess the answer would be yes. I'm in here because he has personal involvement. He is the one that's condoning this for the department. He is the one with knowledge. I understand there's a fine line between municipal liability and supervisory liability. A case that's been around since 1989 is Leach v. Shelby County. And in that case, you had a situation dealt with, whether it's an official capacity suit or a supervisory liability suit. And in that case, they found both the sheriff and the county responsible. And they said, you know, a failure of a supervisory official to control, supervise, control, or train the offending individual employee is not actionable absent of showing the official either encouraged or in some way directly participated. And it goes on to cite the language that's knowingly acquiesced. In this case, what it held is there is no claim that the sheriff directly participated in or encouraged the deprivations of Leach. Do you have to allege, approve, and prove how the policy and practice of deficient or inadequate training and supervision directly contributed to the specific incident that gave rise to the harm to your client? What do you have to show in that regard or plead in the complaint in that regard? In that regard, I think what we have to plead is that there was knowledge of a widespread pattern. And when I was quoting from Leach, here's what they said. That's all you have to show? We have to. This quote from Leach will answer your question, Your Honor. It says, there is some evidence that the sheriff implicitly authorized, approved, or knowingly acquiesced in the action of the responsible jail personnel as shown by the fact that it was not isolated or confined to the plaintiff and that he failed to subsequently punish the responsible individuals. So in this case, the sheriff didn't participate. The sheriff wasn't there. The sheriff knew that this type of conduct was going on, and he didn't discipline people. That exposes the sheriff to personal liability. What I would point out is obviously we're at a motion to dismiss the complaint. We have pled that there was a widespread pattern, that the sheriff knew about it. We have pled that the sheriff himself did an evaluation and investigation of the department and found it was deficient. We showed that the mayor came out and said the conduct of the MPD was unacceptable, that there had been a rash of 54 shootings, that the investigations are a rubber stamp, and that Armstrong approves them. I think we have pled under any theory at this particular stage sufficient facts to survive a motion to dismiss on supervisory liability. And we have alleged something other than just plain old municipal liability. We have a separate count and separate allegations. What's our standard of review, counsel? Standard of review is de novo. This is from an appeal of a qualified immunity. Well, it's de novo, isn't it? Yes, Your Honor. And the courts have held specific facts are not necessary. The statement need only give the defendant fair notice of what the claim is and the grounds of which it rests. And you've done that as far as the district judge has said. With great specificity, you haven't nailed it. But you've given enough, the district judge says, to deny the motion to dismiss at this stage of the proceedings. And we look at that de novo. Yes, Your Honor. If the court doesn't have any more questions, I think the court well understands the issues that face it. It is kind of a difficult area of the law. But we do think that we have pledged something. It's kind of like stigma plus. I think we have the plus here for supervisory liability. Thank you, Your Honor. Thank you. Your Honor, there's just a few points in response to counsel's argument. First of all, he refers to the Leach case. And I discussed this in the reply brief. The Leach v. Shelby County Sheriff case of the 1989 decision, the Leach was a case in which the defendant official was sued only in his official capacity. I would suggest, Your Honor, as I indicated in the reply brief, that Leach is not helpful in determining the extent to which the police director can be held liable in his individual capacity. Secondly, Your Honor, in connection with the case that counsel just discussed that came out this past August, which I must state I'm not familiar with, but at least as he described it, that was a situation in which, first of all, the sheriff or whatever level the official was, was directly involved in. Apparently there were allegations or suggestions that he was involved in an effort to cover up or deliberately gave out false information regarding that incident. There are no such allegations or suggestions in this case. Judge White, you asked regarding how many incidents had occurred since the shooting of Officer Lange in December of 2012. If I correctly heard Mr. Clark correctly, he said there were 18. While it's barely legible, my count of the number of incidents is less than 18. I count 12 incidents, including what I believe to be the incident involving, I'm sorry, 11 incidents, no, 12, including the shooting of Mr. Vanderpool. These were police-involved shootings. Certainly the allegation is that all but one or two of those 12, according to the exhibit attached to the complaint, were concluded as being not justified. So the suggestion that there is a policy by Director Armstrong to, and as he said, he signed off on the investigation. Certainly there's no contention that he conducted the investigation. Memphis is a metropolitan police department. I don't believe one would expect that the police director himself would conduct the investigation. But there's, with all due respect, Judge Keith, the allegations in the complaint, some we would concede are well pleaded. And if you could contrast the statement of facts in Appellant's brief to the statement of facts in the Applea's brief, which appears to just regurgitate everything in the complaint, we do disagree as to whether all of these facts are well pleaded. But certainly we don't challenge or question the well pleaded facts of the complaint, whatever this court deems them to be. And Judge Clay, while during counsel's argument, I was still trying to find a better, best case for the point that the court questioned me about, and I still have not been able to find that at this point. And rather than regurgitate some of the language that, for instance, there's one, this following language that's in Frye v. City of Newport, which is a case that plaintiffs cited. It says, the court also stated that a supervisory official's failure to supervise, control, or train the offending individual is not actionable unless the supervisor either encouraged, in this case, Your Honor, it says, the specific incident or misconduct or in some other way directly participated in it. So I was, I believe there was an earlier question as to what extent the alleged condoning behavior has to relate to the specific incident. There is precedent. Counsel, excuse me. Yes, sir. In this case, I'm going back to the specific what our court said. Specific facts are not necessary. The statement need only give the defendant fair notice of what the claim is and the grounds upon which it is. Now based on the facts in this case, can you say this has not been met? I'll respond this way. In determining the extent to which that is met, the current state of the law is that the cases of Iqbal and Twombly are useful in that evaluation. So there are specific allegations in the complaint and the claims that we are aware of. So we would say that, yes, it has been met to the extent of the well-plaid allegations of the complaint that would satisfy Twombly and Iqbal. So my answer is yes with that qualification. We're looking at that de novo. Yes, Your Honor. You see, at this stage of the proceeding, we're not trying the case, but the Memphis has filed a motion to dismiss the lawsuit. I have filed a motion on behalf. The only issue before this court is the issues related to Director Tony Armstrong's entitlement to the defense of qualified immunity as far as his individual liability is concerned. The rest of the lawsuit is still there, although, as evident from the record, a stay is in place tending the outcome of this appeal, because otherwise, depending on what happens here, it will determine the extent to which, going back to the practical consideration, Director Armstrong has to participate as a party in the discovery proceedings in the lower court as opposed to merely a witness or potential witness. All right. I see that you're out of time. Thank you, Your Honor. I very much appreciate the arguments and the cases submitted.